**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. CR 02-1055 JB

MICHAEL SEVENS MARTINEZ,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Government's Motion for Production of Defendant's Blood for DNA Sample, filed January 9, 2006 (Doc. 16). The Court held a hearing on the motion on February 2, 2006. The primary issue is whether the Court should order the Defendant, Michael Sevens Martinez, to produce a DNA sample. Because Martinez does not oppose the United States' request, and the United States' request does not violate Martinez' rights under the Fourth and Fifth Amendments to the United States Constitution, the Court will grant the motion.

**FACTUAL BACKGROUND**

The alleged victim, Joyce Ortiz, was Martinez' grandmother. See Motion for Production of Defendant's Blood for DNA Sample ("Motion for Production") at 1. She allegedly was raped and killed on August 12, 1997. See id. The FBI laboratory discovered the presence of foreign DNA in Ortiz' body. See id. That DNA was from an unknown individual, and was derived from semen. See id.

During the investigation of this alleged crime, the United States has taken custody of a number of physical pieces of evidence, including these body fluid samples, which were extracted post-

mortem from Ortiz' vagina and anus. See id. at 2. The FBI laboratory is in possession of only crime-scene DNA. See id. at 3.

The Combined DNA Index System ("CODIS") is the law enforcement database in which the known DNA characteristics of unknown offenders who have committed unsolved crimes are stored. See id. at 2. The CODIS system is strictly used as a law enforcement tool and not as a mechanism to establish legal guilt. See id. Unlike the careful chain-in-custody procedures that the FBI and other crime laboratories employ and that trial courts expect, CODIS assembles data as rapidly as possible to enable law enforcement to identify suspects – albeit in an unusually compelling way – of unsolved crimes at the earliest possible moment, so that actions may be taken to possibly prevent those suspects from committing additional crimes. See id. at 2-3. The CODIS unknown sample from Ortiz' homicide was periodically compared to DNA samples taken from offenders in other crimes, with the hope that one day the perpetrator of Ortiz' murder would be required to provide a DNA sample to law enforcement in some unrelated matter and, further, that its characteristics would be input into CODIS. See id. at 2.

## PROCEDURAL BACKGROUND

An indictment was sought after the FBI – the primary investigative agency – discovered the foreign DNA in Ortiz' body. See id. at 1. An indictment was returned in 2002, which named John Doe as the defendant. See id. Both up to and following the return of the "John Doe" indictment in 2002, the CODIS sample from Ortiz' body was periodically compared to DNA samples from offenders in other crimes. See id. at 2.

In September 2005, FBI agents were alerted to a match, which led to Martinez' arrest. See id. at 2. In a superceding indictment filed September 13, 2005, Martinez was named as the

Defendant. See id. He was arrested, and allegedly admitted to raping and murdering Ortiz. See id. Specifically, Martinez is charged with First Degree Murder in the perpetration of aggravated sexual abuse, in violation of 18 U.S.C. § 1111. See Redacted Superceding Indictment at 1, filed September 13, 2005 (Doc. 2).

Although the United States has already used DNA technology to identify Martinez, the government will not offer CODIS evidence to the jury in this case. See Motion for Production at 2. Thus, to determine whether the DNA recovered matches or does not match Martinez' DNA, forensic analysts need a known sample of Martinez' DNA. See id. at 2-3. That sample will be compared to the samples already in the United States' possession. See id. at 3. Because the FBI laboratory is typically very busy, and despite completion of laboratory work on the items of evidence in its possession, the United States anticipates some delay attendant to the acquisition and provision of samples to the laboratory, and that some amount of reasonable time will be necessary for completion of the remaining laboratory work. See id. at 4.

The United States moves for an Order compelling Martinez to provide a blood sample for the purpose of DNA testing. In its moving papers, the United States indicated that Martinez' defense counsel, Assistant Federal Public Defender, Susan Dunleavy, opposed the motion. See id. The United States therefore also requests that, as soon as is convenient following the two-week period in which Martinez may prepare and file a response to this motion, the Court schedule argument on this motion, if necessary. See id. At the hearing, however, Martinez stated that he did not oppose this motion. See Transcript of Hearing at 2:22-23 (taken February 2, 2006).[1]

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

## LAW REGARDING DNA SAMPLES

The United States Court of Appeals for the Tenth Circuit has held that compelling the production of DNA samples does not violate the Fifth Amendment, because such samples are not testimonial in nature. See Boling v. Romer, 101 F.3d 1336, 1340 (10th Cir. 1996)(citing Lucero v. Gunter, 17 F.3d 1347, 1350 (10th Cir. 1994)). This decision stems from the well-settled line of authority that the Fifth Amendment privilege against compulsory self-incrimination does not protect identification evidence obtained from a defendant's body, because such evidence is "non-testimonial." United States v. Dionisio, 410 U.S. 1, 5-6 (1973)(voice exemplar); Gilbert v. California, 388 U.S. 263, 266 (1967)(handwriting exemplars); Schmerber v. California, 384 U.S. 757, 765 (1966)(blood sample). Similarly, requiring a defendant to provide fingerprints does not violate the Fifth Amendment. See United States v. Snow, 82 F.3d 935, 943 (10th Cir. 1996)(citing United States v. Peters, 687 F.2d 1295, 1297 (10th Cir. 1982)(en banc)). The same rule applies to requests for hair samples. See United States v. Dougall, 919 F.2d 932, 935 (5th Cir. 1990). Further, taking such physical evidence does not violate a defendant's Fourth Amendment right to be secure against unreasonable searches and seizures. See, e.g., United States v. Mara, 410 U.S. 19, 21-22 (1973)(citations omitted); United States v. Cotner, 657 F.2d 1171, 1173 (10th Cir. 1981)(citing United States v. Waller, 581 F.2d 585 (6th Cir. 1978)).

## ANALYSIS

Martinez represented at the hearing on February 2, 2006, that he did not oppose the United States' motion. See Transcript of Hearing at 2:22-23. It is incumbent upon the FBI to perform DNA comparison results that are admissible at trial, satisfy the rules of evidence, and which are conducted with scientifically accepted methodology. It is this process which remains to be completed in this

case. Martinez' DNA must be compared to the evidence in the FBI laboratory's possession to legitimize the CODIS link and to determine scientifically if, indeed, his bodily fluids are forensically consistent with those found in and about Ortiz' body.

Furthermore, Martinez' rights against unreasonable searches and seizures and against self-incrimination do not extend to the taking of DNA samples. Like other forms of physical exemplars, the United States may compel the production of Martinez' DNA because his DNA is non-testimonial in nature and, therefore, unprotected by the Fifth Amendment's right against self-incrimination. See United States v. Dionisio, 410 U.S. at 5-6; Gilbert v. California, 388 U.S. at 266; Schmerber v. California, 384 U.S. at 765; Boling v. Romer, 101 F.3d at 1340; United States v. Snow, 82 F.3d at 943; United States v. Dougall, 919 F.2d at 935. Moreover, just as the taking of other forms of physical exemplars does not invade a person's right against unreasonable searches and seizures, extracting Martinez' DNA will not violate his Fourth Amendment rights. See, e.g., United States v. Mara, 410 U.S. at 21-22; United States v. Cotner, 657 F.2d at 1173.[2]

**IT IS ORDERED** that the Government's Motion for Production of Defendant's Blood for DNA Sample is granted. Defendant Michael Sevens Martinez must provide DNA samples and major case prints to the United States. The United States' counsel shall confer with the Defendant's counsel to arrange a reasonable and mutually convenient time for the United States to take the sample and prints.

---

[2] Martinez does not dispute that there is probable cause that he committed the charged crime or that his DNA matches the foreign DNA found on Ortiz. See Transcript of Hearing at 4:9-11. Not only is there a CODIS match, but Martinez has confessed to the crime.

UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
United States Attorney for the
District of New Mexico
J. Miles Hanisee
Assistant United States Attorney for the
District of New Mexico
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Susan Bronstein Dunleavy
Assistant Federal Public Defender
Albuquerque, New Mexico

*Attorney for the Defendant*