# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                No. CR 02-1055 JB

MICHAEL MARTINEZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion to Dismiss the Indictment as Barred by the Statute of Limitations, 18 U.S.C. § 3282(a), and Supporting Memorandum, filed June 20, 2006 (Doc. 39)("Motion to Dismiss").  The Court held a hearing on this motion on August 17, 2006. The primary issues are: (i) whether Congress intended the statute of limitations for first-degree murder on the San Juan Pueblo to be five years or indefinite; and (ii) whether, if the Court determines that the applicable statute of limitations is five years, the original "John Doe" indictment obtained on June 25, 2002 was adequate to toll the statute of limitations.  Because the Court concludes that Congress did not intend to impose any limitations on the investigation and prosecution of crimes for first-degree murder, the Court will deny the motion.

## FACTUAL BACKGROUND

Martinez, a San Juan Pueblo Indian, is charged with one count of murdering Joyce Ortiz with malice aforethought and in the commission of aggravated sexual abuse in violation of 18 U.S.C. § 1153 and 18 U.S.C. § 1111.  <u>See</u> Redacted Superceding Indictment, filed September 13, 2005 (Doc. 2)("Superceding Indictment").  The homicide occurred in Indian Country, within the exterior

boundaries of the San Juan Pueblo in New Mexico.  <u>See</u> Motion to Dismiss ¶ 2, at 1.  The offense occurred on August 12, 1997.  <u>See</u> Superceding Indictment.  Martinez lived in the San Juan Pueblo and in the Espanola, New Mexico area during the years after August 1997 until his arrest in 2005. <u>See</u> Motion to Dismiss at 7.

**PROCEDURAL BACKGROUND**

The United States had not identified a suspect for the murder of Ortiz before 2002.  <u>See</u> <u>id.</u> at 6.  On June 25, 2002, a federal grand jury returned a "John Doe" indictment for murder with malice aforethought and premeditation.  <u>See</u> Indictment, filed June 25, 2002 (Doc. 1).  The June 25, 2002 indictment did not charge murder in the commission of a felony or aggravated sexual abuse, and made no allegation concerning a sexual abuse offense.  <u>See</u> <u>id.</u>  Additionally, the indictment did not otherwise identify "John Doe" by description or other physical attribute, and did not include a DNA profile description of the offender, though one was available at the time.  <u>See</u> Motion to Dismiss at 8; United States' Response to Defendant's Motion to Dismiss Indictment at 3, filed July 20, 2006 (Doc. 43)("United States' Response").

The United States obtained a superceding indictment against Martinez on September 13, 2005 -- over eight years after the commission of the offense.  <u>See</u> Superceding Indictment.  Martinez moves the Court, pursuant to 18 U.S.C. § 3282(a), to dismiss the indictment because it is untimely and the statute of limitations bars prosecution at this time.  <u>See</u> Motion to Dismiss at 1.  Martinez argues that, because the Federal Death Penalty Act prohibits the United States from imposing the death penalty in this case, his crime is not a "capital offense" to which no statute of limitations applies; Martinez contends that the five-year limitations period applicable to non-capital offenses applies to his alleged crime.  The United States opposes this motion.

## LAW REGARDING STATUTE OF LIMITATIONS IN FEDERAL MURDER PROSECUTIONS

The tools for statutory construction that the Court must undertake like first in the language of the statute of limitations and the criminal statutes. Because the language of the statutes do not point in one direction, the Court must also consult the structure of the criminal code and laws regarding the death penalty in Indian Country. Finally, nothing in the legislative history of the statutes suggests the reading of the statute of limitations that Martinez advances.

### 1. Federal Murder Statute and Punishments.

Federal law defines murder as "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a). Murder is classified as murder in the first degree when it is "willful, deliberate, malicious, and premeditated," or when it is committed during the commission or attempt of a felony, including aggravated sexual abuse. Id. Murder in the first degree is punishable "by death or imprisonment for life." 18 U.S.C. § 1111(b).

All murder which does not fall within the enumerated first-degree murder categories is second-degree murder. See 18 U.S.C. § 1111(a). The maximum penalty for second-degree murder is life imprisonment. See 18 U.S.C. § 1111(b).

### 2. Statute of Limitations.

Congress has not imposed a statute of limitations on the prosecution of crimes that are punishable by death. 18 U.S.C. § 3281 is entitled "Capital offenses," and states: "An indictment for any offense punishable by death may be found at any time without limitation." A five-year limitation period exists for non-capital offenses. See 18 U.S.C. § 3282(a). The Supreme Court of the United States and the United States Court of Appeals for the Tenth Circuit have both expressed the view

that "criminal limitations statutes are to be liberally interpreted in favor of repose."  United States v. Habig, 390 U.S. 222, 227 (1968)(internal quotation omitted).  See United States v. Reitmeyer, 356 F.3d 1313, 1321 (10th Cir. 2004).

>    **3.**    **Federal Death Penalty in Indian Country.**

When federal jurisdiction is premised solely upon "Indian country" -- as defined in 18 U.S.C. § 1151 -- and the charged offense occurred within Indian Country, a defendant is not subject to a capital sentence, unless the tribe on whose land the offense occurred has elected to have the federal death penalty provisions be operative over its lands.

> Notwithstanding sections 1152 and 1153, no person subject to the criminal jurisdiction of an Indian tribal government shall be subject to a capital sentence under this chapter for any offense the Federal jurisdiction for which is predicated solely on Indian country (as defined in section 1151 of this title) and which has occurred within the boundaries of Indian country, unless the governing body of the tribe has elected that this chapter have effect over land and persons subject to its criminal jurisdiction.

18 U.S.C. § 3598.  See Elizabeth B. Bazan, Capital Punishment: An Overview of Federal Death Penalty Statutes, at 22, available at http://www.usembassy.it/pdf/other/RL30962.pdf, Jan. 5, 2005 (last visited Feb. 15, 2007).  San Juan Pueblo has not chosen to have the death penalty apply to federal offenses committed within the Pueblo's geographic boundaries.  See Kevin K. Washburn, Federal Criminal Law and Tribal Self-Determination, 84 N.C.L. Rev. 779, 831 (March 2006)(stating that only one tribe, the Sac and Fox Nation of Oklahoma, has opted to have the federal death penalty apply to eligible offenses committed within reservation boundaries).

Legislative history suggests that Congress enacted 18 U.S.C. § 3598 with the intent of granting Indian tribes a  right to elect whether the death penalty applies within their jurisdiction similar to the right that states have to decide whether the death penalty applies to violations of state

law.  See 137 Cong. Rec. S8488, S8490 (daily ed. June 24, 1991)(statement of Sen. Inouye)("[T]his

amendment accords to tribal governments a status similar to that of the State governments, namely

that tribal governments, like State governments, can elect whether or not to have the death penalty

apply for crimes committed within the scope of their jurisdiction.").  The statute was designed to

have limited impact; the statute gives the tribal government the right to make the same election that

a state has regarding its own laws.  See id.; United States v. Gallaher, No. CR-05-224-RHW, 2006

U.S. Dist. LEXIS 39291, at *7 (E.D. Wash. June 13, 2006)("Congress has simply given tribal

governments the discretion to determine whether the death penalty should apply within their

reservations.").  There is no indication that Congress intended for the law to affect the prosecution

of individual defendants for murder; rather, the enactment of 18 U.S.C. § 3598 seems to be focused

on empowering the sovereign nations -- not individual defendants.  See 137 Cong. Rec. at S8491

(statement of Sen. Inouye)("All we are asking by this [statute] is to give the sovereign people in the

sovereign governments of Indian country the same right [as states].").  The sponsors of the statute,

including the Senator from New Mexico familiar with the unique Pueblo system particular to the

Court's district, believed that the right to make this election reflected an appropriate respect for tribal

sovereignty and self-determination.  See id. (statement of Sen. Domenici)("The Senator from New

Mexico is for the death penalty, but I believe that you can be for the death penalty and be for

something else, and I happen to be for something else, and that happens to be Indian sovereignty and

Indian self-determination.").

**4.      Capital Cases not Involving the Death Penalty.**

The parties have not cited, and the Court has not discovered in its independent research, any

appellate decisions addressing the issue whether a tribe's not opting for application of the federal

death penalty renders a capital offense, such as first-degree murder under 18 U.S.C. § 1111, not capital. Courts have considered, however, whether other events not related to Congressional designation of which offenses are capital serve to invalidate that determination.

In United States v. Kostadinov, 721 F.2d 411 (2d Cir. 1983), the United States Court of Appeals for the Second Circuit considered a defendant's interlocutory appeal of a district court's denial of pretrial release on bail after the defendant was indicted on two counts involving espionage. The district court in United States v. Kostadinov had denied the defendant's request, citing "'extreme and unusual circumstances' justifying pretrial detention without bail under 18 U.S.C. § 3146." Id. at 412. In affirming the district court, the Second Circuit noted that it did not have to decide whether "extreme and unusual circumstances" justify denying bail under 18 U.S.C. § 3146, because the defendant had been charged with espionage -- an offense punishable by death -- and 18 U.S.C. § 3148 "explicitly permits the denial of pretrial bail in 'capital' cases." United States v. Kostadinov, 721 F.2d at 412.

In reaching its decision, the Second Circuit in United States v. Kostadinov acknowledged that the United States had conceded that it would not seek the death penalty because of the constitutional uncertainties that Furman v. Georgia, 408 U.S. 238 (1972), raised, but held that the Supreme Court's decision in Furman v. Georgia "did not necessarily have the effect of invalidating all statutes that were tied to the concept of a 'capital' case." United States v. Kostadinov, 721 F.2d at 412 (quoting United States v. Kennedy, 618 F.2d 557, 558 (9th Cir. 1980)). The Second Circuit concluded: "We think it plain that the purpose of the 'capital case' distinction in the bail statute derives from the nature of the offense with which a given defendant is charged and not from the potential severity of the punishment." United States v. Kostadinov, 721 F.2d at 412 (citing United States v. Watson, 496

-6-

F. 2d 1125, 1128 (4th Cir. 1973)).

The United States Court of Appeals for the Ninth Circuit, in <u>United States v. Manning</u>, 56 F.3d 1188 (9th Cir. 1995), reached a conclusion similar to the Second Circuit's statute of limitations ruling in <u>United States v. Kostadinov</u> by similarly focusing on Congressional intent.  The defendant in <u>United States v. Manning</u>, had been indicted for murder by mail bomb in violation of 18 U.S.C. § 1716 seven years after committing the crime.  See <u>id.</u> at 1193.  The Ninth Circuit noted that, although a crime under 18 U.S.C. § 1716 was punishable by death at the time the defendant committed the crime, it had subsequently held that the statute's provisions authorizing the death penalty were unconstitutional.  See <u>id.</u> at 1195.  Nevertheless, the Ninth Circuit in <u>United States v. Manning</u> upheld the charges against the defendant reasoning that, "[w]hen a decision renders unconstitutional a penalty for an offense, it does 'not necessarily have the effect of invalidating all statutes that were tied to the concept of a 'capital' case." <u>Id.</u> at 1196.  The Ninth Circuit explained that, "[i]f the statute's purpose derives from the nature of the offense with which the defendant is charged and not from the potential severity of the punishment, it remains in effect."  The Ninth Circuit found it notable that, although it had struck down the capital punishment provision of 18 U.S.C. § 1716, the original Congressional purpose underlying its enactment was unchanged; "the <u>statute</u> still authorizes the imposition of the death penalty and Congress has not repealed it."  <u>United States v. Manning</u>, 56 F.3d at 1196 (emphasis in original).

The United States Court of Appeals for the Eighth Circuit has similarly turned to the plain language of federal criminal statutes to infer Congressional intent.  In <u>United States v. Emery</u>, 186 F.3d 921 (1999), the Eighth Circuit considered the appeal of a defendant who had been convicted of murdering a federal witness in violation of 18 U.S.C. § 1512(a)(1)(C).  See <u>United States v.</u>

Emery, 186 F.3d at 924.  The defendant in United States v. Emery had argued that because 18 U.S.C. § 1512 had been enacted in 1986 -- a time during which Furman v. Georgia prohibited capital punishment -- Congress could not have intended the killing of a federal witness to be a capital crime and therefore 18 U.S.C. § 3282's five-year statute of limitations barred his prosecution.[1]  See id. at 924.  The Eighth Circuit in United States v. Emery rejected the defendant's argument, noting that the penalty section of 18 U.S.C. § 1512 incorporated the sentencing provisions of 18 U.S.C. § 1111, which had always permitted capital punishment for defendants convicted of first-degree murder.  See id.  According to the Eighth Circuit, "the crime Mr. Emery was indicted and convicted for was therefore a capital crime, to which no statute of limitations applies."  Id.

Most recently, in United States v. Ealy, 363 F.3d 292 (4th Cir. 2004), the United States Court of Appeals for the Fourth Circuit considered a case in which a defendant argued that 18 U.S.C. § 3282's five-year statute of limitations barred his prosecution for capital offenses related to his involvement in three murders.  The defendant, Samuel Ealy, had been indicted in late 2000 on one count of conspiracy to murder and three counts of murder based on murders that had occurred in 1989.  See id. at 294.  Ealy did not contest that the charged crimes carried the possibility of the death penalty, but contended that, because of the Supreme Court's decision in Furman v. Georgia, and the United States' failure to allege any statutory aggravating factors in the indictment, his offenses were not "'punishable by death' under [18 U.S.C.] § 3281 [and] were instead 'not capital' for limitations purposes."  Id. at 296.

The Fourth Circuit rejected the argument, reasoning that, even if Ealy was correct in asserting

---

[1]The Eighth Circuit's opinion in United States v. Emery notes that the crime of the defendant's conviction was committed in 1990.  See 186 F.3d at 924.  The opinion does not, however, mention the date of the defendant's indictment.

that the death penalty was unavailable in his case, "whether a crime is 'punishable by death' under [18 U.S.C.] § 3281 or 'capital' under [18 U.S.C.] § 3282 depends on whether the death penalty may be imposed for the crime under the enabling statute, not 'on whether the death penalty is in fact available for defendants in a particular case.'" Id. at 296-97 (quoting United States v. Church, 151 F. Supp. 2d 715, 717 (W.D. Va. 2001)). The Fourth Circuit concluded that, "[e]ven if a court cannot impose the death penalty for an offense, that does not render the offense 'not capital' with respect to other statutes 'predicated in their operative effect upon the concept of capital crime.'" United States v. Ealy, 363 F.3d at 297 (quoting United States v. Watson, 496 F.2d at 1127).

Finally, the Court has found only one Tenth Circuit case addressing an issue similar to the one before it. In United States v. Maestas, 523 F.2d 316 (1975), the Tenth Circuit considered the appeal of a defendant who had been convicted of first-degree murder and rape. See id. at 318. At trial, the defendant had requested twenty peremptory challenges in accordance with rule 24(b)(1) of the Federal Rules of Criminal Procedure, which permits twenty challenges when the United States seeks the death penalty. See id. at 318-19; Fed. R. Crim. P. 24(b)(1). After the United States' prosecutor stipulated that he would not seek the death penalty at a pretrial hearing, however, the district court in United States v. Maestas denied the defendant's request for twenty peremptory challenges and restricted him to the standard ten challenges. See United States v. Maestas, 523 F.2d at 319. In affirming the trial court's decision, the Tenth Circuit held that, based on the prosecutor's stipulation, the "case lost its capital nature as charged in the indictment and Maestas was not improperly denied the [twenty] peremptory challenges under Rule 24(b)." Id.

  **5. United States v. Gallaher.**

At least one other federal district court has considered a case in which an Indian defendant

had been indicted for first-degree murder in Indian country under 18 U.S.C. § 1111 more than five years after the date of the crime.  In United States v. Gallaher, the Honorable Robert H. Whaley, Chief United States District Judge, distinguished the application of 18 U.S.C. § 3598 from other scenarios where judicial or legislative decisions have made the imposition of the death penalty impossible in a given case.  See 2006 U.S. Dist. LEXIS 39291, at **4-8.  Chief Judge Whaley argued that "Congress did not 'clearly remove' all crimes, the jurisdiction of which is predicated on their occurrence in Indian country, from the classification of 'capital offenses.'"  Id. at *6.  Instead, Chief Judge Whaley determined that Congress had delegated its power to impose a capital sentence upon defendants subject to federal jurisdiction to the tribal government.  See id.  Chief Judge Whaley emphasized in United States v. Gallaher that otherwise "capital offenses" are still "punishable by death" under 18 U.S.C. § 3598, "because tribal governments could elect to impose the death penalty."  Id.

Citing United States v. Manning -- the Ninth Circuit case that distinguished between provisions directed at the nature of the substantive offense and those concerned with mitigating the threat of severe punishment -- Chief Judge Whaley also asserted in United States v. Gallaher that the "unlimited statute of limitations for capital offenses in [U.S.C.] § 3281 is 'inextricably tied to the nature of the offense.'"  United States v. Gallaher, 2006 U.S. Dist. LEXIS 39291, at *7 (quoting United States v. Manning, 56 F.3d at 1196).  Reasoning that because "premeditated murder is among the most serious of all crimes," it would be inappropriate to remove first-degree murder from the classification of capital offenses in 18 U.S.C. § 3281 without a clear expression of Congressional intent.  United States v. Gallaher, 2006 U.S. Dist. LEXIS 39291, at **7-8.

-10-

## LAW REGARDING TOLLING OF STATUTES OF LIMITATIONS

Chapter 213 of Title 18 of the United States Code contains several exceptions to the general five-year statute of limitations for non-capital offenses found in 18 U.S.C. § 3282(a).  For example, no statute of limitations applies to individuals who are fugitives or otherwise fleeing from justice. See 18 U.S.C. § 3290.

Chapter 213 also makes a number of exceptions for cases involving DNA evidence.  See 18 U.S.C. § 3297.  When a defendant is indicted for an offense under Chapter 109A of Title 18, an indictment of an unknown individual will be sufficient to toll the statute of limitations if it includes a description of the individual's DNA profile.  In addition, in all cases where DNA evidence implicates a defendant, 18 U.S.C. § 3297 states that "no statute of limitations that would otherwise preclude prosecution of the offense shall preclude such prosecution until a period of time following the implication of the person by DNA testing has elapsed that is equal to the otherwise applicable limitation period."  Id.  The application of 18 U.S.C. § 3297, however, is limited; the statute was enacted on October 30, 2004, and the statute's application provision states that it "shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this section if the applicable limitation period has not yet expired."  Id.

## ANALYSIS

To the Court's knowledge, only one other federal court has considered the statute of limitations question presented, see United States v. Gallaher, 2006 U.S. Dist. LEXIS 39291, and there are no appellate decisions precisely on point.  Martinez argues that, because the United States did not charge him within the appropriate five-year period of limitations, the Court should dismiss the indictment against him.  See Motion to Dismiss at 9.  In his argument that the Court should

dismiss the indictment, Martinez contends: (i) that the offense with which the United States charged him is not a capital offense; (ii) that the United States failed to indict Martinez within the applicable five-year limitation period that 18 U.S.C. § 3282(a) provides; and (iii) no exceptions to that period apply.  Because the Court believes that Martinez has improperly conflated the availability of a "capital sentence" under 18 U.S.C. § 3598 with the definition of a "capital offense," and/or a an "offense punishable by death" under 18 U.S.C. § 3281, because the Court finds that 18 U.S.C. § 3598 does not undermine the capital nature of first-degree murder as charged under 18 U.S.C. § 1111, and because, based upon that finding, the Court concludes that 18 U.S.C. § 3282(a)'s five-year statute of limitations does not apply, the Court will deny Martinez' motion.

## I.    CONGRESS DID NOT INTEND TO NEGATE THE CAPITAL NATURE OF FIRST-DEGREE MURDER WHEN IT ENACTED 18 U.S.C. § 3598.

Martinez argues that, because the homicide with which the United States charges him in this matter cannot be punished by death, it is not a capital offense, and the applicable statute of limitations is five years.  See Motion to Dismiss at 4.  Martinez asserts that, when Indian Tribes or Pueblos exercise their unique prerogative to "opt out," or prevent, federally charged tribal or pueblo members from facing an otherwise available sentence of capital punishment, it renders applicable the otherwise inapplicable five-year statute of limitations that applies to non-capital offenses.

The task before the Court is one of determining Congressional intent.  While the language of the statute is most important in determining Congress' intent, the language in 18 U.S.C. §§ 3281 and/or 3598 does not give, standing alone, a clear answer.  While Martinez' argument has logic and force, the language in 18 U.S.C. §§ 3281 and 3598 does not, alone, answer the question whether Congress intended the phrase "capital offense" and/or "offense punishable by death" in 18 U.S.C.

§ 3281 to apply to a class of crimes of a particularly heinous nature that potentially could be punished by death, or to a particular defendant's offense when the circumstances of the defendant's prosecution make capital punishment a punitive option.

Martinez does not appear to dispute that, but for 18 U.S.C. § 3598, 18 U.S.C. § 3281 would apply to his case. Thus, the question is whether, by enacting 18 U.S.C. § 3598, Congress intended to amend or modify 18 U.S.C. § 3281's application to the case.

The Court agrees with the United States that Martinez' motion overlooks the difference between a statutorily available sentence and the case-specific sentence he potentially faces. <u>See</u> United States' Response at 2. While the Court will and should keep its foot solidly on the base of the statute's language, the Court also looks at the framework that Congress has created for all federal crimes, penalties, and limitations. In doing such, it appears to the Court that Congress did not want such rules to depend on case specifics as much as on the category of the substantive crime. Moreover, while the Court cannot disregard 18 U.S.C. § 3598, it notes that 18 U.S.C. § 1111 still authorizes the imposition of the death penalty and that Congress has not made any changes to it. <u>See</u> <u>United States v. Manning</u>, 56 F.3d at 1196 (recognizing that, although the Ninth Circuit had found 18 U.S.C. § 1716's death penalty provision unconstitutional, Congress had not repealed or amended the statute).

A more natural construction of Congress' language in 18 U.S.C. § 3281 would be that any case to which the death penalty could be applied does not have a limitation. Indeed, the plain language of 18 U.S.C. § 3281 -- "[a]n indictment for any offense punishable by death may be found at <u>any</u> <u>time</u> <u>without</u> <u>limitation</u>" -- reflects Congress' "judgment that some crimes are so serious that an offender should always be punished if caught." <u>United States v. Gallaher</u>, 2006 U.S. Dist. LEXIS

39291, at *7.  Such a construction more accurately conforms to Congress' likely intent and is more easily applied.  Moreover, without a clear expression of Congressional desire to do so, the Court does not believe it would be appropriate to remove first-degree murder from the classification of capital offenses as Congress understood that category in 18 U.S.C. § 3281.

The Court believes the language of 18 U.S.C. § 3598 also supports this conclusion.  18 U.S.C. § 3598 states that "no person subject to the criminal jurisdiction of an Indian tribal government shall be subject to a capital sentence . . . unless the governing body of the tribe has elected that this chapter [the Federal Death Penalty Act] have effect over land and persons subject to its criminal jurisdiction."  18 U.S.C. § 3598.  In 18 U.S.C. § 3598, Congress chose to use the adjective "capital" to modify the noun "sentence."  This phrase is distinct from 18 U.S.C. § 3281, which, in its title, uses "capital" to modify the noun "offense."   The Court believes this distinction is significant, because 18 U.S.C. § 3598 makes no reference to any substantive provision of the criminal code or to any statute of limitations; it focuses exclusively on punishment -- an aspect of the criminal justice system which does not come into play until the other substantive statutes and statutes of limitations at issue have had their operative effect.  The Court will presume that Congress was aware of 18 U.S.C. § 3281 -- first enacted in 1948 -- when, in 1994, it passed 18 U.S.C. § 3598.  See South Dakota v. Yankton Sioux Tribe, 522 U.S. 329, 351 (1998)("[W]e assume that Congress is aware of existing law when it passes legislation.")(internal quotations omitted).   Congress understands that the adjective "capital" can be used to modify a class of offenses, and chose, instead, to focus on a defendant's "sentence" in 18 U.S.C. § 3598.  If Congress wanted 18 U.S.C. § 3598 to modify the application of its other laws in Indian County, it could have written the law to do that. Without a more explicit direction to the contrary, the Court will not empower 18 U.S.C. § 3598 with

-14-

more authority than Congress' language has given to it.

The Court also does not believe that Martinez' proposed interpretation of 18 U.S.C. § 3598's impact on the categorization of capital offenses in Indian Country is well grounded in Congress' reasons for establishing the tribal opt-in procedure.  Martinez has not presented evidence that Congress' motivation in endowing tribes with the discretion to allow or prohibit capital sentences in otherwise capital-eligible cases occurring on tribal lands was anything other than its desire to show respect for the inherent sovereignty of Indian nations.  Nor has Martinez pointed to any legislative material related to the passage of 18 U.S.C. § 3598 indicating that Congress' view regarding the maximum potential sentence appropriate for capital offenses had changed, or suggesting a modification in Congressional opinion regarding the seriousness of first-degree murder and Congress' resolve that the passage of time should not nullify the success of first-degree murder prosecutions.  The legislative history of 18 U.S.C. § 3598 suggests that the provision was passed to empower sovereign nations at the institutional level, not undermine the legitimacy of the death penalty.  Indeed, Senator Domenici, one of the bill's sponsors,  indicated that he was an advocate of the death penalty.  See 137 Cong. Rec. at S8491 (statement of Sen. Domenici)("The Senator from New Mexico is for the death penalty, but I believe that you can be for the death penalty and be for something else, and I happen to be for something else, and that happens to be Indian sovereignty and Indian self-determination.").  In short, there is little to give comfort that Congress thought its decision on tribal sovereignty and the death penalty extended to the statute of limitations on first-degree murder.

Policy decisions are for Congress and not for the Court.  Accordingly, the Court is reluctant to examine the policy implications of a ruling.  Nevertheless, it is worth noting, as a possible means

of determining Congressional intent, the impact that Martinez' proposed expansion, if the Court were to adopt it, would have on the otherwise tightly limited circumstances where tribal will may trump that of Congress' in matters of federal criminal law.  First, the expansion would establish a novel framework where the crime of first-degree murder in Indian communities cannot be prosecuted after five years unless unique circumstances are present.  Second, it would free Martinez from responsibility for his grandmother's rape and murder, because his identity as the perpetrator remained unknown in excess of five years from the date of that crime.  The Court does not believe that Congress intended these results.

The Court also believes its decision is consistent with federal caselaw that has explored the interplay between the availability of the death penalty and statutes that depend on the "capital" nature of an offense for their application.  The Court agrees with the Fourth Circuit's reasoning in United States v. Ealy that, "[e]ven if a court cannot impose the death penalty for an offense, that does not render the offense 'not capital' with respect to other statutes 'predicated in their operative effect upon the concept of a capital crime.'"  United States v. Ealy, 363 F.3d at 297 (quoting United States v. Watson, 496 F.2d at 1127).  More important, the Court agrees with Chief Judge Whaley's conclusion in United States v. Gallaher that first-degree murder is still a capital offense, because it is still punishable by death; the limited effect of 18 U.S.C. § 3598 is that, in Martinez' case, the decision whether to impose that punishment belongs to the San Juan Pueblo rather than to Congress. See United States v. Gallaher, 2006 U.S. Dist. LEXIS 39291, at *7.

Nor does the Tenth Circuit's decision in United States v. Maestas require a different result. Martinez, in his Response to the Court's Minute Order requesting the parties to comment on the impact of United States v. Maestas, agrees that the decision in that case "neither supports nor

-16-

undermines Mr. Martinez' position." Defendant's Response to the Court's Minute Order Regarding the Motion to Dismiss the Indictment at 1, filed August 21, 2006 (Doc. 48); Minute Order, filed August 18, 2006 (Doc. 47). In United States v. Maestas, the Tenth Circuit evaluated the application of rule 24(b)(1) -- a provision specifically tailored to respond to the idiosyncracies of an individual defendant's case. Rule 24(b)(1) is subtitled "Capital Case," not "Capital Offense," and provides twenty peremptory challenges "when the government seeks the death penalty." Fed. R. Crim. P. 24(b)(1). Indeed, a trial court could not even know whether it should grant a defendant rule 24(b)(1)'s protections until after the United States had articulated its intention to seek the death penalty. The Court believes this language reflects rule 24(b)(1)'s focus on the "severity of the punishment rather than the nature of the offense." United States v. Manning, 56 F.3d at 1196 (quoting United States v. Dufur, 648 F.2d 512, 515 (9th Cir. 1980)).

This conclusion is also consistent with the Tenth Circuit's language in United States v. Maestas. The Tenth Circuit in United States v. Maestas stated that, when the United States' prosecutor stipulated that he would not seek the death penalty, the "case lost its capital nature as charged in the indictment." 523 F.2d at 319 (emphasis added). By contrast, the Tenth Circuit's opinion in United States v. Maestas does not indicate that the underlying offenses -- murder and rape -- lost their capital nature. On the other hand, 18 U.S.C. § 3281 is subtitled "Capital offenses" and expressly states that "[a]n indictment for any offense punishable by death may be found at any time without limitation." 18 U.S.C. § 3281 (emphasis added). Moreover, while the tribal opt-in procedure may modify how the death penalty is applied to first-degree murder committed in Indian country, nothing in 18 U.S.C. § 3598 suggests that first-degree murder in Indian country is not punishable by death. To the contrary, 18 U.S.C. § 3598 expressly empowers tribes with the authority

to execute capital offenders if they so choose.

The Court agrees with the United States' description of Martinez as fortunate to be a member of a limited class of potential defendants who do not face the death penalty, but not so fortunate as to be immune from Congress' judgment that first-degree murder is a very serious offense.  See United States' Response at 3.  The Court denies Martinez' motion on the basis of statutory interpretation.  The Court gleans this interpretation from the statute's language and framework, and from cases involving similar circumstances.  The Court also relies upon consideration of discernible Congressional intent in its careful assignment of punishment for first-degree murder.

In sum, it appears undisputed that 18 U.S.C. § 3281 would apply to Martinez' case but for 18 U.S.C. § 3598.  The language of 18 U.S.C. § 3598 does not, standing alone, suggest that Congress intended to change that application.  Moreover, the structure of Title 18 and the available legislative history suggests that Congress intended 18 U.S.C. § 3281 to apply to a class of offenses before conviction and not to be decided -- possibly after conviction[2] -- on a case-by-case basis.  Such an interpretation as Martinez advances would undercut the policy of repose that the statutes of limitations were meant to serve and would directly contravene Congress' judgment regarding the seriousness of first-degree murder.

---

[2] One purpose of statutes of limitation is to assist prosecutors, defendants, and the courts in determining an individual's prosecutorial status before the parties exert the energy and resources necessary for a prosecution, defense, and adjudication.  Martinez' emphasis on the possible sentence in an individual case is in contravention to this purpose.  Taking Martinez' theory to its extreme, when a defendant was indicted for first-degree murder more than five years from the date of the crime, and is acquitted, but nevertheless found guilty of the lesser included offense of second-degree murder -- a non-capital offense -- the parties would not know the applicable statute of limitations, and thus defendant's prosecutorial status, until after the defendant had already been convicted.

## II.   THE COURT NEED NOT DECIDE WHETHER THE 2002 "JOHN DOE" INDICTMENT TOLLED THE STATUTE OF LIMITATIONS.

The United States does not argue that its 2002 "John Doe" Indictment in this case serves to extend the five-year non-capital-case window if 18 U.S.C. § 3282(a) was to be applied to this case. See United States' Response at 3.  The 2002 indictment did not toll the running of the statute of limitations.

Martinez was not charged with an offense under Chapter 109A of Title 18 and his 2002 Indictment did not include a description of his DNA profile.  Consequently, the exception in 18 U.S.C. § 3282(b) does not apply.  The United States also concedes that Martinez was not a fugitive -- he was neither sought by nor fleeing law enforcement -- and, therefore, 18 U.S.C. § 3290 does not operate to toll the statute of limitations in this prosecution.  See United States' Response at 3-4.

The United States contends that the application of 18 U.S.C. § 3297, which tolls the commencement of any otherwise applicable limitations period until DNA testing implicates an individual, "presents an interesting issue from the standpoint of retroactivity."  United States' Response at 4.  The application provision of 18 U.S.C. § 3297 states that it "shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this section [October 30, 2004] if the applicable limitation period has not yet expired."  Id.  While the United States does not waive the argument that retroactive application is appropriate in the context of this statute, it urges the Court not to resolve an issue unnecessary to the denial of Martinez' motion. Because the Court has already determined that 18 U.S.C. § 3281 is the proper statute of limitations to apply in this case, however, and therefore the statute of limitations for the substantive offense with which Martinez has been charged has not expired, it need not decide for the purposes of this motion

-19-

whether 18 U.S.C. § 3297 applies in this case.

**IT IS ORDERED** that the Motion to Dismiss the Indictment as Barred by the Statute of

Limitations, 18 U.S.C. § 3282(a), is denied.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

David C. Iglesias
  United States Attorney
J. Miles Hanisee
  Assistant United States Attorney
Albuquerque, New Mexico

      _Attorneys for the Plaintiff_

Susan B. Dunleavy
  Assistant Federal Public Defender
Albuquerque, New Mexico

      _Attorney for the Defendant_